UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN S. PRESSMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LEON E. LOMBARD, )<br>aka Grove Associates, )<br>)<br>Defendant. ) | C.A. No. 05-10497-RCL |

MEMORANDUM AND ORDER

LINDSAY, District Judge.

For the reasons set forth below, the court (1) grants the application of the plaintiff to proceed *in forma pauperis*; (2) dismisses the complaint for lack of subject matter jurisdiction; and (3) denies as moot the motions for appointment of counsel and preliminary injunctive relief.

BACKGROUND

On March 15, 2005, plaintiff Jonathan S. Pressman filed the complaint in this action and an application to proceed without prepayment of the $250.00 fee assessed for commencing a civil action. The next day, Pressman filed a second application to proceed *in forma pauperis*, a motion for appointment of counsel, and a motion for preliminary injunctive relief. The thrust of Pressman's claims is that defendant Leon E. Lombard, the owner of the apartment complex in which Pressman resides, is wrongfully preventing Pressman from renting a one-bedroom apartment within the same complex. In his motion for a preliminary injunction, Pressman asks that the court enjoin Lombard from renting the one-bedroom apartment that Pressman feels he is entitled to occupy.

The documents Pressman submitted contain the following allegations: Pressman currently resides in a studio apartment in an apartment complex in Arlington, Massachusetts. He is a participant in the "Section 8" housing program, by which the federal government pays the cost of Pressman's rent directly to Pressman's landlord.[1] While residing in the studio apartment, Pressman has been without heat on approximately eighteen occasions. On each occasion, Lombard's son purportedly repaired the heater, but the repairs have never lasted more than fifteen days.

Pressman seeks to move into a one-bedroom apartment because his studio apartment "is too small (clautrophobic risk [sic])" and because of the frequent problems with the heating in the studio. Compl. at 2. The benefits Pressman receives under the Section 8 program permit him to rent a one-bedroom apartment and will provide Pressman $1,087.00 a month to do so. Eight or nine months ago, a one-bedroom in the apartment complex where Pressman resides became available. For no reason, Pressman allegedly "was *denied* this [apartment] (no reason given)." *Id.* at 2. Approximately four weeks ago, another one-bedroom apartment in the complex became available. On two occasions, the building superintendent informed Pressman and his father, Dr. David L. Pressman ("Dr. Pressman"), that the rent for the apartment was $1,050.00 per month. Pressman's request for "this available [apartment] was ignored by [Lombard]." *Id.* Thereafter, Lombard's son stated that Pressman "could not qualify" for the apartment because the rent was $1,350.00 per month; later, he retracted and said the rent was $1,200.00 per month. Dr. Pressman found the apartment advertised on the internet for $1,150.00 and $1,100.00 per

---

[1]For an explanation of the Section 8 program, see *People to End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1, 3 (1st Cir. 2003) and *Free v. Landrieu*, 666 F.2d 698, 699-700 (1st Cir. 1981).

month.  Pressman alleges that the realty agent of Lombard was also involved in advertising inconsistent prices for the one-bedroom apartment.

      Dr. Pressman contacted the Metropolitan Boston Housing Partnership (the "MBHP") and regional counsel for the United States Department of Housing and Urban Development ("HUD") concerning the fact that Lombard would not offer to rent the available one-room apartment at the price originally quoted by the superintendent.  Eventually, the MBHP negotiated, on behalf of Pressman, a rental price of $1,100.00 per month, with a lease to begin on or about March 15, 2005.  However, in a letter dated March 12, 2005, Lombard informed Pressman:

> You are a good tenant and we are pleased to have you as a resident in our building and did consider your request to transfer to a one bedroom apartment.
>
> We tolerated but are not intimidated by your fathers [sic] accusations, abusive language and threats.  We were working with Metropolitan Boston Housing Partnership to grant your request.
>
> When I arrived home last night I found that your father had upset one of the other residents in the building.  This I cannot and will not tolerate.
>
> I have a deep concern that if you have a larger apartment your father might spend more time with you and possibly offend more tenants.  For this reason and reasons mentioned above I am notifying Metropolitan Boston Housing Partnership that I do not wish to proceed with a new lease.

A copy of this letter is attached to the motion for a preliminary injunction.  Pressman denies that his father offended another tenant.  Pressman also alleges that Lombard verbally "stated that the 'real' reason was [for which Lombard refused to rent Pressman the one-bedroom apartment] was Dr. Pressman's 'threats' to have Section 8 violations claimed and [the question of] 'cover-up' by real estate agents and owners's son reported and claims filed for alleged violations of HUD Section 8, ADA and civil rights etc[.] etc."  Compl. at 3; *see also id.* at 2 ("Owner denied rental

to [Pressman]–real reason alleged to be [Pressman]'s father's insistence that heat failure be evaluated and fixed by qualified heating contractor."). In the final sentences of his complaint, Pressman alleges that he has been treated for major depression and a bi-polar disorder, that he is disabled, and that there is a "risk of precipitation of recurrence of severe depression with loss of this apartment." *Id.* at 4.

## DISCUSSION

I.    Motion to Proceed *In Forma Pauperis*

Pressman alleges that he receives three different forms of public assistance, has minimal assets, and works a part-time job for $10.00 per hour. Based on this information, the court grants the applications of Pressman to proceed without prepayment of the filing fee.

II.   Subject Matter Jurisdiction

The court must dismiss Pressman's action for lack of subject matter jurisdiction. In any lawsuit, "[i]t is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction." *McCullock v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). If a district court discovers that it lacks subject matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

It is clear from the face of the pleadings that the court lacks subject matter jurisdiction to entertain the claims of Pressman. Although Pressman alleges that jurisdiction is proper under 28 U.S.C. § 1331, which grants the district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United states," *id.*, Pressman has failed to allege such a claim. Pressman purports to bring his action based on violations federal regulations and statutes concerning Section 8, the Americans with Disabilities Act, and

4

unidentified civil rights. His factual allegations, however, do not state a claim for relief based under any of these three theories.

      A.      <u>Law Governing Administration of Funds for the Section 8 Program</u>

Pressman alleges that Lombard violated unspecified federal laws governing the Section 8 program by (1) failing to maintain the studio apartment in the condition required for the landlord to participate in the Section 8 program; and (2) raising the price of the one-bedroom apartment because Pressman participates in the Section 8 program. Neither of these allegations supports a claim for relief under federal law. Federal rules and regulations do require that private landlords receiving Section 8 funds maintain their rental units in a condition that meets certain housing quality standards. *See* 42 U.S.C. § 1437f(o)(8)(B); 24 C.F.R. § 982.401. These laws, however, do not provide holders of Section 8 vouchers with a right of action in federal court to enforce the prescribed housing quality standards. *See, e.g.*, *Banks v. Dallas Housing Auth.*, 271 F.3d 605, 609-611 (5th Cir. 2001); *Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 764 (E.D. Mich. 2004); *cf.* 24 C.F.R. § 982.456 ("The HAP [housing assistance payment] contract [between HUD and the private property owner] shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract ...."). Rather, these laws regulate the distribution of federal rental subsidies to private property owners. *See, e.g.*, *Banks*, 271 F.3d at 616, 609-10 (explaining that, where statute permitted HUD to provide funds to private property owners who were willing to rehabilitate and keep their housing "decent, safe, and sanitary," the statute did "nothing more than explain what property owners must do in order to receive public subsidies").

B.     <u>Discrimination on the Basis of Disability or Handicap</u>

Pressman alleges that Lombard has violated the rights of Pressman under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (the "ADA"), but Pressman does not identify, nor could the court locate, any provision of the ADA that prohibits the alleged misconduct by Lombard.  The ADA prohibits discrimination on the basis of disability in the areas of employment, §§ 12111-12117, services offered by public entities §§ 12131-12165, and public accommodations and services operated by private entities, §§ 12181-12189.  The alleged misconduct of Lombard does not fall into any of these categories.  Employment is not at issue in this lawsuit.  Assuming Pressman is a "qualified individual with a disability," he has not alleged that he has been "excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Moreover, residential housing is not a public accommodation under the ADA.  *See* 42 U.S.C. § 12181(7)(A) (including "an inn, hotel, motel, or other place of lodging" within the definition of public accommodations); H.R. Rep. No. 101-485(II), at 100 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 383 (stating that "only nonresidential facilities" are covered by title of the ADA concerning public accommodations, and explaining that "in a large hotel that has a residential apartment wing, the residential wing would be covered under the Fair Housing Act .... The nonresidential accommodations in the rest of the hotel would be covered by this title").  For this reason alone, Pressman has failed to state a claim under the ADA.

Moreover, even if the court were to construe the allegations of Pressman as an attempt to state a claim under the provisions of the Fair Housing Act prohibiting discrimination of the basis of handicap, 42 U.S.C. § 3604(f) (the "FHA"), relief is not available to him under the statute.

6

The FHA prohibits, *inter alia*, discrimination "*because of a handicap*" in the rental or "the terms, conditions, privileges" of the rental of a dwelling, and in "the provision of services or facilities in connection with" the rented dwelling." § 3604(f)(1), (2) (emphasis added). Discrimination includes a refusal to permit reasonable physical modifications of the dwelling in question, or a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person *equal opportunity* to use and enjoy a dwelling." § 3604(f)(3)(A), (B) (emphasis added).

Here, Pressman has not alleged that Lombard refused to rent to one-bedroom apartment to Pressman *because of* any handicaps Pressman may have. In fact, Pressman suggests that Lombard refused to rent the one-bedroom apartment because Dr. Pressman complained about the heating in the studio apartment. Further, Pressman has not alleged that Lombard either refused to allow physical modifications of the one-bedroom apartment necessary to accommodate the alleged handicaps of Pressman, or that Lombard refused to institute changes in policies or services necessary to afford Pressman the same opportunity as a non-handicapped individual to enjoy the one-bedroom apartment. Simply put, Pressman has not made any connection between his alleged handicaps and the alleged misconduct of Lombard

    C.    <u>Other Civil Rights</u>

Finally, the allegations of Pressman that Lombard violated Pressman's "civil rights" also fail to state a claim for relief. Without any indication from Pressman of what "civil rights" are at issue, the court merely notes that, to the extent that Pressman seeks to bring claims for violations of his rights under the First through Fourteenth amendments of the United States Constitution, such claims fail because these rights are only implicated where the federal or state *government* is

responsible for the complained-of conduct, *see, e.g.*, *Yeo v. Town of Lexington*, 131 F.3d 241, 248-49 (1st Cir. 1997) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). Because Pressman has not alleged, nor does the complaint suggest in any way, that Lombard is a government actor, then Pressman's rights to be free from certain action by the government cannot be violated by Lombard's conduct. *See, e.g.*, *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239 (5th Cir. 1982) (where apartments were owned and operated by a private corporation, corporation's involvement with government-funded rental assistance program did not create a sufficient nexus between the corporation and the government to transform private action into state action).

III.   Motions for Preliminary Injunctive Relief and Appointment of Counsel

Because the court must dismiss this case for lack of subject matter jurisdiction, the motions of Pressman for preliminary injunctive relief and appointment of counsel are denied as moot.

### CONCLUSION

For the reasons stated above, the court is without subject matter jurisdiction over this action and must dismiss it. The court therefore (1) grants the application of Pressman to proceed without prepayment of the filing fee; (2) orders that this action be dismissed for lack of subject matter jurisdiction; and (3) denies as moot the motions for preliminary injunctive relief and for appointment of counsel.

This dismissal does not affect any claims under state law Pressman might prosecute in state courts or agencies.

SO ORDERED.

 April 6, 2005                        /s/ Reginald C. Lindsay
DATE                                  UNITED STATES DISTRICT JUDGE